UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

LETICIA AND YOVANY,

                    Plaintiffs,

           - v. -

UNITED STATES OF AMERICA,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Civil Action
No. 1:22-cv-7527

(Garaufis, J.)
(Levy, M.J.)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS

BREON PEACE
United States Attorney
*Counsel for Defendant United States*
271-A Cadman Plaza East
Brooklyn, New York 11201

July 13, 2023

Of Counsel:

KIMBERLY A. FRANCIS
MELANIE SPEIGHT
Assistant U.S. Attorneys

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND LEGAL BACKGROUND .............................................................. 3

    I.    Statutory and Legal Framework ............................................................... 3

        A.    Legal Framework for Noncitizens Entering the Country ........................... 3

        B.    The *Flores* Agreement ............................................................... 5

        C.    Executive Branch Enforcement ................................................ 5

    II.    Relevant Factual Allegations and Procedural Background .................................. 7

        A.    Plaintiffs Unlawfully Cross the Southern Border into Texas .................... 7

        B.    Plaintiffs Are Separated in Texas .............................................. 7

        C.    Plaintiffs Commence this Action in New York ......................................... 8

ARGUMENT .............................................................................................................. 9

    I.    TRANSFER IS WARRANTED UNDER 28 U.S.C. § 1404(a) ............................ 9

        A.    Legal Standard Governing Motions Pursuant to 28 U.S.C. § 1404 ........... 9

        B.    This Action Could Have Been Commenced in the Western District of Texas .......................................................................... 10

        C.    The Balance of Factors Strongly Favors Transferring This Matter to Texas .......................................................................... 10

            1.    The Convenience of the Witnesses Strongly Favors Transfer ................................................................. 11

            2.    The Operative Facts Occurred in Texas, Favoring Transfer ......... 13

            3.    The Convenience of the Parties Is a Neutral Factor .................... 14

            4.    The Plaintiffs' Choice of Forum Has Diminished Weight Here .................................................................... 14

            5.    The Availability of Compulsory Process Favors Transfer ........... 15

            6.    The Means of the Parties Is a Neutral Factor ............................... 16

7.      The Forum's Familiarity with Governing Law Favors Transfer .................................................................................. 16

8.      Judicial Economy and the Interests of Justice Favor Transfer .................................................................................. 17

II.      IN THE ALTERNATIVE, DISMISSAL IS WARRANTED FOR LACK OF SUBJECT MATTER JURISDICTION ................................................................. 17

A.      Legal Standard Governing Motions Pursuant to Fed. R. Civ. P. 12(b)(1) .......................................................................................... 18

B.      The Discretionary Function Exception Bars Plaintiffs' Claims .............. 18

1.      The DFE Bars Claims Arising from Leticia's Referral for Prosecution ................................................................................. 20

2.      The DFE Bars Claims Arising from Leticia's Detention ............ 22

3.      Plaintiffs' Challenges to the Conditions of Their Confinement Are Barred by the DFE ......................................... 24

4.      Allegations of Unconstitutional Conduct Do Not Foreclose The DFE ....................................................................................... 25

C.      The Exception for Actions Taken While Reasonably Executing the Law Bars Claims Arising from Transfer to ORR Custody ...................... 29

D.      The Independent Contractor Doctrine Bars Plaintiffs' Negligence, IIED, and Assault and Battery Claims Arising From Alleged Conduct and Conditions at West Texas Detention Center and Casa Kokopelli .......................................................................................... 31

E.      Plaintiffs' Negligence and Abuse of Process Claims Are Not Cognizable Because There Is No Private Analogue ................................. 33

F.      The § 2680(c) Exception to the FTCA Bars The Conversion Claim ........ 35

III.      DISMISSAL IS WARRANTED FOR FAILURE TO STATE A CLAIM .......... 35

A.      Plaintiffs Fail to State a Claim for IIED .................................................... 35

B.      Plaintiffs Fail to State a Negligence Claim ............................................... 38

C.      Plaintiffs Fail to State Claims for Assault and Battery ............................ 38

D.      Plaintiffs Fail to State a Claim for Abuse of Process ............................... 39

CONCLUSION ................................................................................................................ 40

**Federal Cases**

*Adeleke v. United States*, 355 F.3d 144 (2d Cir. 2004)............................................................ 17, 19

*Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007) ............................................................................. 27, 36

*Aguilar v. United States*, No. 1:16-CV-048, 2017 WL 6034652
(S.D. Tex. June 7, 2017) .......................................................................................................... 36-38

*Alpha Indus., Inc. v. Alpha Clothing Co., LLC*, No. 21-cv-87 (KPF),
2021 WL 2688722 (S.D.N.Y. June 30, 2021) .................................................................. 13, 15, 17

*Antonelli v. Crow*, 08-261, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012)....24*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013)................................................... 11

*Bailor v. Salvation Army*, 51 F.3d 678 (7th Cir. 1995)................................................................ 22

*Barry v. United States*, No. 21-cv-7684 (BCM), 2022 WL 4467504
(S.D.N.Y. Sept. 26, 2022)...................................................................................................... 12, 14-17

*Berkovitz v. United States*, 486 U.S. 531 (1988) ......................................................... 18-20, 28

*Blanco Ayala v. United States*, 982 F.3d 209 (4th Cir. 2020).................................................... 20

*Bultema v. United States*, 359 F.3d 379 (6th Cir. 2004)............................................................ 24

*Burgos v. United States*, No. 16-cv-7091 (RA), 2017 WL 2799172
(S.D.N.Y. June 27, 2017)......................................................................................................... 9, 14, 15

*C.P. Chem. Co., Inc. v. United States*, 810 F.2d 34 (2d Cir. 1987) ....................................... 26, 30

*Campos v. United States,* 888 F.3d 724 (5th Cir. 2018) ............................................................. 19

*Caronia v. Orphan Med., Inc.*, 643 F. App'x 61 (2d Cir. 2016).................................................. 21

*Caronia v. United States*, No. 13-CV-5758, 2015 WL 4872558 (E.D.N.Y. Aug. 13, 2015)....... 21

*Carter v. United States*, 494 F. App'x 148 (2d Cir. 2012) .......................................................... 33

*Chen v. United States*, 854 F.2d 622 (2d Cir. 1988)................................................................... 33

*Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172 (E.D.N.Y. 2003)..................... 9

*Clayton v. United States*, No. 18-cv-5867, 2019 WL 9283977 (E.D.N.Y. Aug. 1, 2019) ........... 30

*Cmtte. Of Cent. Am. Refugees v. I.N.S.,* 795 F.2d 1434 (9th Cir. 1986)...................................... 22

*Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000) .................................................... 18, 19

*Dalehite v. United States*, 346 U.S. 15 (1953) ................................................................... 29

*Delta Air Lines, Inc. v. Assoc. of Flight Attendants, CWA,*
720 F. Supp. 2d 213 (E.D.N.Y. 2010) ............................................................................. 10

*Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999) ...................................................... 17

*E.L.A. v. United States,* 2:20-cv1524-RAJ, 2022 WL 2046135 (W.D. Wash. June 3, 2022)........ 40

*FDIC v. Meyer*, 510 U.S. 471 (1994) ............................................................................. 16,17

*Felipe v. United States*, No. 1:21-CV-00095-JHR-LF,
2023 WL 2383784, (D.N.M. Mar. 6, 2023).................................................................... 20

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ................................................................... 5

*Ford v. U.S.*, 85 F. Supp. 3d 667 (E.D.N.Y. 2015)............................................................. 35

*Garza v. United States*, 881 F.Supp. 1103 (S.D. Tex. 1995).............................................. 26

*Gray v. Bell*, 712 F.2d 490 (D.C. Cir. 1983)...................................................................... 21

*Guccione v. Harrah's Mkt'g Servs. Corp.*, No. 06-cv-4361 (PKL),
2009 WL 2337995 (S.D.N.Y. July 29, 2009) ................................................................. 13

*Harisiades v. Shaughnessy*, 342 U.S. 580 (1951).............................................................. 22

*Hernandez v. United States*, 2018 WL 4103015 (S.D. Tex. July 2, 2018)............................. 15, 26

*Huff v. Neal*, 555 F. App'x 289 (5th Cir. 2014).................................................................. 24

*In re United States*, 945 F.3d 616 (2d Cir. 2019) ............................................................... 20

*Jones v. U.S.*, No. 02-cv-1017(JG), 2002 WL 2003191 (E.D.N.Y. Aug. 26, 2002) .................. 14

*Korotkova v. United States*, 990 F. Supp. 2d 324 (E.D.N.Y. 2014) ...................................... 31

*Kosak v. United States*, 465 U.S. 848 (1984)..................................................................... 35

*Larca v. United States*, No. 11 CIV. 3952 JMF, 2012 WL 6720910
(S.D.N.Y. Dec. 16, 2012)............................................................................................ 14, 15

*Lehman v. Nakshian*, 453 U.S. 156 (1981)........................................................................ 17

*Leone v. United States*, 910 F.2d 46 (2d Cir. 1990)............................................................ 31

iv

*Lihua Jiang v. Clinton*, No. 08-CV-4477, 2011 WL 5983353
(E.D.N.Y. Nov. 28, 2011) .............................................................................. 18

*Lineberry v. United States,* 3:08-cv-0597, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) .......... 24

*Lipsey v. United States*, 879 F.3d 249 (7th Cir. 2018) ............................................... 22

*Logue v. United States*, 412 U.S. 521 (1973) ............................................................ 31

*Lopez-Flores v. Ibarra*, No. 1:17-cv-00105, 2018 WL 6577955 (S.D. Tex. Mar. 12, 2018) ....... 34

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ............................................. 18

*McElroy v. United States,* 861 F.Supp. 585 ............................................................. 26

*McGowan v. United States*, 825 F.3d 118 (2d Cir. 2016) ............................................. 33

*Mohsen v. Morgan Stanley & Co.*, No. 11-cv-6751, 2013 WL 5312525
(S.D.N.Y. Sept. 23, 2013) ................................................................................ 9

*Monfried v. Sigma Fin. Corp.*, No. 15-cv-2806 (VSB), 2016 WL 9724977
(S.D.N.Y. June 14, 2016) ................................................................................ 17

*N.Y. Marine & Gen. Ins. Co. v. Lafargee N. Am.*, 599 F.3d 102 (2d Cir. 2010) ................... 9

*Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325 (E.D.N.Y. 2006) .............. 11, 16

*Nielsen v. Preap*, 139 S. Ct. 954 (2019) ................................................................. 22

*Patel v. United States*, 398 F. App'x 22 (5th Cir. 2010) ............................................. 24

*Peña Arita v. United States*, 2020 WL 3542256 (S.D. Tex. June 30, 2020) .................. 21, 23, 24

*Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246 (E.D.N.Y. 2010) ........ 10, 11, 14, 15

*Roditis v. United States*, 122 F.3d 108 (2d Cir. 1997) ............................................... 31

*Roe v. United States*, 839 F. App'x 836 (5th Cir. 2020) ............................................ 37, 39

*Schuyler v. Sun Life Assurance Co.*, No. 20-cv-10905 (RA) (BCM), 2021 WL 5853991
(S.D.N.Y. Dec. 9, 2021) .................................................................................. 11

*Shivers v. United States*, 1 F.4th 924 (11th Cir. 2021), *cert. denied*,
142 S. Ct. 1361 (2022) ............................................................................... 19, 26

*U.S. v. Gaubert*, 499 U.S. 315 (1991) .............................................. 19, 20, 25, 27-29

*Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239 (5th Cir. 1993) ........................... 36

*United States v. Jennings*, 652 F.3d 290 (2d Cir. 2011) ................................................. 27

*United States v. Mitchell*, 463 U.S. 206 (1983) ............................................................ 24

*United States v. Nordic Vill., Inc.*, 503 U.S. 30 (1992).......................................... 24, 33

*United States v. Olson*, 546 U.S. 43 (2005) ................................................................... 40

*United States v. Orleans*, 425 U.S. 807 (1976)............................................................. 38

*United States v. Varig Airlines*, 467 U.S. 797 (1984).................................................. 25

*Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858 (S.D.N.Y. 1991).................. 12

*W.P.V. v. United States*, No. 21-cv-4436 (JPC), 2023  WL 1991426
(S.D.N.Y. Feb. 14, 2023) .................................................................................... *passim*

*Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545 (E.D.N.Y. 2012) ...................... 16, 17

*Walding v. United States*, 955 F. Supp. 2d 759 (W.D. Tex. 2013)............................... 39

*Williams v. Swack*, No. 12-cv-1552 (CBA), 2013 WL 5423791 (E.D.N.Y. Sept. 26, 2013)....... 18

*Wood v. United States*, 175 Fed App'x 419 (2d Cir. 2006) ......................................... 29

**State Cases**

*Baty v. ProTech Ins. Agency*, 73 S.W.3d  (Tex. App—Houston [14th Dist.] 2001) ................... 39

*Bossin v. Towber*, 894 S.W.2d 25 (Tex. App.—Houston [14th Dist.] 1994) ............... 39

*City of Watauga v. Gordon*, 434 S.W.3d 586 (Tex. 2014) ......................................... 38

*Dillard Dep't Stores v. Silva*, 106 S.W.3d 789, *aff'd in part, mod. in part
on other grounds*, 148 S.W.3d 370 (Tex. 2004) ...................................................... 36

*Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004)....................... 37

*Hunt v. Baldwin*, 68 S.W.3d 117 (Tex.App.—Houston [14th Dist.] 2001)................. 39

*RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc.*, 957 S.W.2d 121
(Tex. App.—Houston [14th Dist.] 1997 ................................................................... 39

*Wornick Co. v. Casas*, 856 S.W.2d 732 (Tex. 1993)................................................... 35

*RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc.*, 957 S.W.2d 121
(Tex. App.—Houston [14th Dist.] 1997 ................................................................... 41

*Wornick Co. v. Casas*, 856 S.W.2d 732 (Tex. 1993)............................................. 36, 37

**Statutes**

6 U.S.C. § 279 ............................................................................................... *passim*

8 U.S.C. § 1225 ................................................................................................ 3-4

8 U.S.C. § 1226 ............................................................................................. 4, 22

8 U.S.C. § 1231(g) ............................................................................................. 22

8 U.S.C. § 1232 .............................................................................................. *passim*

8 U.S.C. § 1325 ............................................................................................. 4, 6-7

8 U.S.C. § 1326 .................................................................................................. 6

8 U.S.C. § 1357 .................................................................................................. 4

8 U.S.C. § 1404(a) ......................................................................................... *passim*

8 U.S.C. § 2671 ............................................................................................. 1, 31

28 U.S.C. § 1346 .......................................................................................... *passim*

28 U.S.C. § 1402(b) ........................................................................................... 10

28 U.S.C. § 1404 ............................................................................................. 2, 9

28 U.S.C. § 2674 ........................................................................................... 3, 33

28 U.S.C. § 2680 ......................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................. 1, 18

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1

Fed. R. Civ. P. 45(c)(1) ..................................................................................... 15

## PRELIMINARY STATEMENT

Pursuant to 28 U.S.C. § 1404(a), Defendant United States of America respectfully submits this memorandum of law in support of its motion to transfer venue to the Western District of Texas, or, in the alternative, to dismiss pursuant Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

In November 2017, Plaintiff Leticia unlawfully crossed the United States-Mexico border into Texas with her then-minor son, Yovany.[1] In accordance with the law, federal agents apprehended Plaintiffs in Texas and placed them into detention in Texas. Over the ensuing days in Texas, Plaintiffs were separated from one another: Leticia was referred for prosecution for unlawful entry and subsequently held primarily in a privately run detention facility in Texas until her eventual removal to Guatemala, while, in the interim, Yovany was transferred to the custody of the Department of Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR"). Yovany was housed at Southwest Key Programs Casa Kokopelli ("Casa Kokopelli"), a privately run residential shelter in Mesa, Arizona. Plaintiffs allege that Leticia gave Yovany the option of returning to Guatemala with her or staying in the United States; he chose the latter and, in August 2018, opted to be transferred to long-term foster care in San Antonio, Texas. Plaintiffs have since been reunited, following Leticia's return to the United States in January 2020.

Plaintiffs commenced this action solely under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"), asserting claims arising out of their separation for: intentional infliction of emotional distress ("IIED"); negligence; abuse of process; assault and battery; and conversion. Plaintiffs filed suit in this district – despite having crossed the border in Texas, having

---

[1] The parties have stipulated to the use of Plaintiffs' pseudonyms Leticia and Yovany, respectively, in this litigation, without conceding the facts giving rise to it. *See* ECF No. 10.

been apprehended in Texas, and, most notably, having been separated in Texas. Indeed, the only link to this district is that Plaintiffs allege that, after Leticia's return to the United States in January 2020, they moved to this district and currently live here.

As an initial matter, the Court should transfer this action to the Western District of Texas under 28 U.S.C. § 1404, in the interest of justice and for the convenience of the witnesses. The operative facts giving rise to the Government's alleged liability took place in Texas, from Plaintiffs' apprehension to their separation. Predictably, numerous witnesses to those acts are located in and around Texas. According to the Government's preliminary assessment, U.S. Customs and Border Protection ("CBP") – the agency that apprehended and detained Plaintiffs – has identified 10 individuals who may have knowledge of the facts alleged in Plaintiffs' complaint; five work in Texas, and three others work near the southern border. Likewise, U.S. Immigration and Customs Enforcement ("ICE") has also confirmed that the likely witnesses to facts relevant to Leticia's time in ICE custody are in Texas. And because Texas is the location where the putatively tortious conduct allegedly occurred, Texas state law would likely apply. The U.S. District Court for the Western District of Texas would be more familiar with Texas law as well as any facts or issues common to the other cases pending there. No allegedly tortious conduct occurred in New York. Texas – not New York – is the center of gravity for this FTCA action, as another New York district court has recently noted under similar circumstances in transferring that suit. *See W.P.V. v. United States*, No. 21-cv-4436 (JPC), 2023 WL 1991426 (S.D.N.Y. Feb. 14, 2023).

In the alternative, this action should be dismissed in its entirety, or in part, on multiple, independent grounds. The United States does not defend the wisdom of the policy choices that led to family separations during the previous Administration. But Congress designed the FTCA as a limited waiver of the Government's sovereign immunity, which does not encompass the conduct

challenged by Plaintiffs. <u>First</u>, the FTCA's "discretionary function exception" ("DFE"), set forth at 28 U.S.C. § 2680(a), precludes Plaintiffs' claims insofar as they arise from their apprehension for illegal entry, Leticia's detention, and decisions as to Yovany's placement and timing of release from ORR custody, because these were discretionary decisions susceptible to policy analysis. *See* Part II. B. <u>Second</u>, regardless of whether the DFE applies, the FTCA's exception for actions taken while executing the law, *see* 28 U.S.C. § 2680(a), bars Plaintiffs' claims arising from Yovany's transfer to ORR custody because the law required such transfer. *See* Part II.C. <u>Third</u>, the independent contractor doctrine—which excludes from the FTCA's limited sovereign immunity waiver torts committed by an independent contractor—bars Plaintiffs' negligence and IIED claims to the extent they challenge conduct at privately owned and operated facilities where Plaintiffs were housed following their separation. *See* Part II.D. <u>Fourth</u>, Plaintiffs' abuse of process and negligence claims are barred for lack of jurisdiction owing to the lack of the private analogue required under 28 U.S.C. § 2674; the FTCA's limited waiver of sovereign immunity does not apply where, as here, a private person would not be liable under state law for the alleged tortious conduct. *See* Part II.E <u>Fifth</u>, the FTCA's exceptions also bar the conversion claim. *See* Part II.F.

Even if this Court, *arguendo,* had jurisdiction over some portion of this suit, Plaintiffs fail to state any FTCA claim because, under Texas law (and, as relevant, Arizona law), their alleged tort claims are insufficiently pleaded and fail as a matter of law.

In sum, transfer to the Western District of Texas or dismissal is warranted.

<u>**FACTUAL AND LEGAL BACKGROUND**</u>

## I.   Statutory and Legal Framework

### A.   Legal Framework for Noncitizens Entering the Country

Noncitizens arriving in the United States, including those who do not arrive at a designated port of entry, are generally considered "applicant[s] for admission" and must be "inspected by

3

immigration officers" upon their arrival. 8 U.S.C. §§ 1225(a)(1), (3). When a noncitizen enters the United States outside an official port of entry, he or she commits a violation of federal criminal law. *See* 8 U.S.C. § 1325(a) (imposing fines and imprisonment up to 6 months for a first offense and up to 2 years for a subsequent offense). Noncitizens – including both adults and any accompanying children – who unlawfully enter the country may also be subject to detention and removal from the United States. *See, e.g.*, 8 U.S.C. §§ 1225(b), 1226, 1357.

Federal law also imposes requirements for the care and custody of minor children who enter the United States without authorization. In particular, ORR is tasked with "the care and placement of unaccompanied alien children who are in Federal custody by reason of their immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A); *see also* 8 U.S.C. § 1232(b)(1). An "unaccompanied alien child" ("UAC") is defined as someone who: (1) "has no lawful immigration status in the United States," (2) "has not attained 18 years of age," and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), an agency must ordinarily "transfer the custody of [a] child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3). Once a UAC has been transferred to ORR custody, the child must "be promptly placed in the least restrictive setting that is in the best interest of the child" considering the child's "danger to self, danger to the community, and risk of flight." *Id.* § 1232(c)(2)(A). UACs may not be released "upon their own recognizance." 6 U.S.C. § 279(b)(2)(B). Rather, ORR is required to "make[] a determination that the proposed custodian is capable of providing for the child's physical and mental well-being" before placing a child with any individual or entity. 8 U.S.C. § 1232(c)(3)(A).

## B.    The *Flores* Agreement

In 1996, the federal government entered into a settlement agreement establishing a "nationwide policy for the detention, release and treatment of minors" (whether or not unaccompanied by parents) "in the custody of [federal immigration authorities]" (the "*Flores* Agreement"). *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016). Under the *Flores* Agreement, the federal government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. *Flores*, 828 F.3d at 902-03.

Significantly, the *Flores* Agreement applies only to minors; it does not concern or contemplate the "housing of family units and the scope of parental rights for adults apprehended with their children," nor does it "contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Flores*, 828 F.3d at 906. While the *Flores* Agreement does give preference to the release of minors to a parent, this "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Id.* at 908. Nor does it provide any rights to adult detainees, including any rights of release. *Id.*

## C.    Executive Branch Enforcement

The Department of Homeland Security ("DHS"), of which CBP and ICE are components, has responsibility for border security, including enforcement of U.S. laws as to unlawful immigration. *See* Border Security, available at https://www.dhs.gov/topics/border-security. CBP agents patrolling the country's borders are organized into 129 stations within 22 sectors. *See* CBP Snapshot, available at https://www.cbp.gov/sites/default/files/assets/documents/2023-Feb/fy22-cbp-snapshot.pdf. These stations and sectors may have distinct areas of operational focus. *See, e.g.*, Border Patrol Overview, available at https://www.cbp.gov/border-security/along-us-borders/overview (describing examples of location-specific Operations).

The enforcement of federal immigration laws became the subject of several nationwide policy directives beginning in 2017. First, Executive Order 13767, 82 Fed. Reg. 8793, 2017 WL 388888 (Jan. 30, 2017) ("EO 13767"), directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law." EO 13767 § 6. In addition, EO 13767 directed DHS to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute" and only when an individual "demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole." EO 13767 § 11(d). Second, in April 2017, the Department of Justice issued guidance directing federal law enforcement to prioritize the prosecution of several immigration-related offenses, including unlawful entry under 8 U.S.C. § 1325 and unlawful reentry under 8 U.S.C. § 1326. *See* U.S. DOJ Memo. on Renewed Commitment to Criminal Immigration Enforcement, available at https://www.justice.gov/opa/press-release/file/956841/download.

In April 2018 (approximately five months *after* the separation at issue in this case), then-Attorney General Sessions issued a "Memorandum for Federal Prosecutors along the Southwest Border," https://www.justice.gov/opa/press-release/file/1049751/download, directing federal prosecutors – not DHS, which is not a component of DOJ – "to the extent practicable, and in consultation with DHS – to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)," which, as described above, imposes criminal liability for unlawful entry into the United States. In May 2018, then-DHS-Secretary Nielsen directed DHS operational components at the border, to the extent practicable, to refer for criminal prosecution all those who illegally cross the border. *See C.M. v. United States of America,* No. 19-cv-05217 (D. Az.), Dkt. No. 379-13 at 22-26, dated May 4, 2018.

Following Secretary Nielsen's direction, DHS referred adults who had unlawfully crossed the southern border for prosecution. Minor children traveling with those adults were transferred to ORR custody, consistent with the TVPRA. *See generally* 6 U.S.C. § 279; 8 U.S.C. § 1232(b)(3).

## II.    Relevant Factual Allegations and Procedural Background

### A.    Plaintiffs Unlawfully Cross the Southern Border into Texas

Leticia and her son, Yovany—currently an adult but alleged to have been 15 at the time of separation in 2017—allege that they are Guatemalan nationals. Cplt.[2] ¶¶ 12, 23. In November 2017, Plaintiffs unlawfully entered the United States. *Id.* ¶ 24. Plaintiffs allege that they crossed the southern border into the United States near Presidio, Texas on or about November 20, 2017. *Id.* ¶ 24; Declaration of Mark G. Davies, dated July 12, 2023 ("Davies Decl.") ¶ 9. Shortly thereafter, Plaintiffs were apprehended by CBP agents. *Id.* Leticia acknowledged to CBP officers that they had unlawfully entered the United States and they did not have documents allowing them to be lawfully present in the United States. *See* Davies Decl. ¶ 9.

Because they had unlawfully entered the United States, Plaintiffs were apprehended and transported to a CBP station in Presidio, Texas. *See id.* ¶ 9. Leticia was referred for prosecution under 8 U.S.C. § 1325, which, as described above, makes it a criminal offense to unlawfully enter the United States. *See* Cplt. ¶ 36; Davies Decl. ¶ 10.

### B.    Plaintiffs Are Separated in Texas

As Leticia was referred for criminal prosecution, Yovany was designated a UAC pursuant to 6 U.S.C. § 279(g)(2). *See* Davies Decl. ¶ 11; *see also* 8 U.S.C. § 1232(a)(3) (describing process for custody of unaccompanied children "who are apprehended at the border of the United States or at a United States port of entry"). Consequently, Plaintiffs were separated from one another on

---

[2] All references herein to "Cplt." refer to the Complaint filed in this action, No. 22-cv- 7527 (NGG), at Dkt No. 1.

or about November 21, 2017, while they remained in CBP custody in Texas. *See* Cplt. ¶ 29; *accord* Davies Decl. ¶ 12.[3]

Leticia was transferred into ICE custody and held at the privately owned and operated West Texas Detention Facility in Sierra Blanca, Texas. *See* Davies Decl. ¶ 15; Declaration of Alfonso Ramirez, dated July 12, 2023 ("Ramirez Decl.") ¶ 7; Cplt. ¶ 34. Leticia remained in Texas during the entirety of the relevant period. *See* Davies Decl. ¶¶ 9, 15-16; Ramirez Decl. ¶¶ 7-9.

Yovany was transferred to ORR custody on or about November 22, 2017. *See* Declaration of James De La Cruz, dated July 13, 2023 ("De La Cruz Decl."), ¶ 3; *see also* Cplt. ¶¶ 55, 59. Specifically, Yovany was flown from a CBP facility in Texas to Arizona, where he was transported to Casa Kokopelli, an ORR-funded charitable organization that provides care and shelter for UACs. *See* De La Cruz Decl. ¶ 3; *see also* Cplt. ¶ 58. He remained at Casa Kokopelli until he was transferred to Compass Connections Long Term Foster Care Program in San Antonio, Texas in August 2018, having elected not to return to Guatemala with his mother, who was removed from the United States in June 2018. *See* Cplt. ¶ 80; *accord* De La Cruz Decl. ¶ 4. In February 2020, Yovany was released from ORR custody to be reunified with Leticia, who had returned to the United States. *See* De La Cruz Decl. ¶ 5. Plaintiffs now live in Brooklyn, New York. *Cf.* Cplt. ¶ 13.

## C.  Plaintiffs Commence this Action in New York

Plaintiffs commenced this FTCA action alleging five torts stemming from their separation from one another in Texas: (i) IIED; (ii) negligence; (iii) abuse of process; (iv) assault and battery; and (v) conversion. *See* Cplt. (Counts I – V).

---

[3] The criminal complaint against Leticia was subsequently dismissed. *See* Cplt. ¶ 37; Davies Decl. ¶ 15.

## ARGUMENT

### I.  TRANSFER IS WARRANTED UNDER 28 U.S.C. § 1404(a)

Although Plaintiffs unlawfully entered the United States in Texas, were apprehended in Texas, were detained in Texas, and were separated in Texas, Plaintiffs commenced this action in the Eastern District of New York. No part of any tort is alleged to have occurred here; Plaintiffs' only connection to this district is that they allegedly currently reside here. The Court should transfer this case to the Western District of Texas under 28 U.S.C. § 1404(a).

#### A.  Legal Standard Governing Motions Pursuant to 28 U.S.C. § 1404

Courts are authorized, pursuant to 28 U.S.C. § 1404(a), to transfer an action to a more suitable venue in the interest of justice:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

The party seeking to transfer venue in those circumstances must show that transfer is warranted by clear and convincing evidence. *See N.Y. Marine & Gen. Ins. Co. v. Lafargee N. Am.*, 599 F.3d 102, 114 (2d Cir. 2010). A court may consider affidavits and materials outside of the pleadings on a motion to transfer venue. *See Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003); *see also Mohsen v. Morgan Stanley & Co.*, No. 11-cv-6751, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (collecting cases).

In assessing whether to transfer venue, courts generally apply a two-part test: (i) could the action have been brought in the proposed forum, and (ii) does the balance of convenience and justice favor transfer. *See Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545, 548-49 (E.D.N.Y. 2012); *accord Burgos v. United States*, No. 16-cv-7091 (RA), 2017 WL 2799172, at *2 (S.D.N.Y. June 27, 2017); *see also W.P.V.*, 2023 WL 1991426, at *3.

**B.     This Action Could Have Been Commenced in the Western District of Texas**

The first part of the § 1404(a) test is satisfied: it is beyond dispute that this action could have been commenced in Texas because the operative facts took place there. *Wald,* 856 F. Supp. 2d. at 548-49. As noted above, Plaintiffs allege that federal officials apprehended, detained, and separated them in Texas. *See generally* Cplt., ECF No. 1; *see also* Davies Decl. ¶¶ 9-16. That separation gives rise to all of Plaintiffs' claims. In other words, Plaintiffs' separation from one another in the Western District of Texas is the "act or omission complained of" for purposes of venue, such that under the FTCA's venue provision, *see* 28 U.S.C. § 1402(b), this FTCA action could have been commenced there. *See WPV,* 2023 WL 1991426, at \*3.

**C.     The Balance of Factors Strongly Favors Transferring This Matter to Texas**

The second prong of the § 1404(a) test is also satisfied because the convenience of the parties and witnesses and the interest of justice warrants transfer. *Wald,* 856 F. Supp. 2d. at 548-49. In assessing that question, courts frequently look to nine factors: (1) the convenience of the witnesses; (2) the locus of operative facts; (3) the convenience of the parties; (4) the plaintiff's choice of forum; (5) the location of relevant documents and physical evidence; (6) the availability of process to compel attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with the governing law; and (9) judicial economy and the interests of justice. *Delta Air Lines, Inc. v. Assoc. of Flight Attendants, CWA*, 720 F. Supp. 2d 213, 217 (E.D.N.Y. 2010); *see also WPV*, 2023 WL 1991426, at \*3 Of those, the convenience of the witnesses "is typically regarded by courts as the most important factor in considering a motion to transfer pursuant to § 1404(a)." *Delta*, 720 F. Supp. 2d at 218. Even so, "[t]here is no strict formula for the application of these factors, and no single factor is determinative." *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 250-51 (E.D.N.Y. 2010).

The factors weigh heavily towards transfer. Indeed, in this circuit, the Honorable John P. Cronan of the Southern District of New York recently reached the same conclusion under similar circumstances. *See W.P.V.*, 2023 WL 1991426. There, as here, the plaintiffs commenced an action under the FTCA for claims arising from their separation at the southern border, in that case near El Paso, Texas. *Id.* at *1. Like Plaintiffs here, the plaintiffs in *W.P.V.* sued in New York. However, there, unlike here, certain events resulting from the separation did take place in New York because W.P.V.'s son was transferred to and safely housed at a facility in the Bronx, New York, operated by an ORR contractor before being reunited with his parent. *Id.* The Government moved to transfer to the Western District of Texas, arguing that "Plaintiffs' entry into the United States, their detention following entry, their subsequent separation, and [father] W.P.V.'s confinement and criminal prosecution" all occurred in Texas, such that most witnesses would be located there. *Id.* The court agreed, finding that transfer was warranted because Texas was the "center of gravity of the litigation." *Id.* at *4. This Court should find the same here and transfer this action to the Western District of Texas, where the center of gravity of this suit is located. *See Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." (citations omitted)).[4]

## 1.    The Convenience of the Witnesses Strongly Favors Transfer

---

[4] *But see F.C.C. v. United States,* No. 22-cv-5057 (NRM) (JMW) (E.D.N.Y.), June 15, 2023 Docket Entry (in family separation case, denying motion for discretionary transfer without prejudice to renew in light of, *inter alia*, current factual record). In *F.C.C.*, unlike here, the minor plaintiff had been housed for approximately four months at an ORR-funded shelter in this district, and, unlike here, plaintiffs had argued that tortious conduct occurred in this district and that relevant witnesses would be located in this district. *See generally* Dkt. No. 25.

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Schuyler v. Sun Life Assurance Co.*, No. 20-cv-10905 (RA) (BCM), 2021 WL 5853991, at *3 (S.D.N.Y. Dec. 9, 2021) (cleaned up); *accord Rindfleisch*, 752 F. Supp. 2d at 252 (collecting cases). The aim of this factor is not to tally the number of witnesses in each proposed forum, but to assess the materiality of their anticipated testimony. *See Williams v. Swack*, No. 12-cv-1552 (CBA), 2013 WL 5423791, at *4 (E.D.N.Y. Sept. 26, 2013); *see also Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006).

The Government anticipates that many of the most material witnesses will be located in or close to the Western District of Texas. That is unsurprising. Plaintiffs allege that they unlawfully crossed the United States-Mexico border in Texas, where they were apprehended by CBP agents. *See* Cplt. ¶ 24. Plaintiffs were detained together in Texas and allegedly separated from each other by federal agents in Texas. Davies Decl. ¶¶ 9-13. And while Yovany was transferred from Texas to a non-governmental facility in Arizona, Cplt. ¶ 59, Leticia remained in detention in Texas until her eventual removal to Guatemala, *id.* ¶¶ 39, 80.

Based upon those allegations, the federal officials who would likely be called as witnesses in this action are predominantly located in and around Texas. Indeed, CBP records have preliminarily identified ten agents and supervisors who were involved in the apprehension and detention of Plaintiffs in Texas. *See* Davies Decl. ¶ 17. Of those, five are currently assigned to stations in Texas. *Id.* Three others are located at or near the southern border. *Id.* Similarly, ICE's records reflect that those individuals likely to have knowledge of Leticia's detention in ICE custody are located in Texas. *See* Ramirez Decl. ¶ 12. Requiring such a multitude of witnesses to travel to New York (potentially multiple times) would be both costly and inefficient. It would also take numerous federal officers away from their enforcement and processing duties for days at a

time. *See* Davies Decl. ¶ 17. Under these circumstances, transfer would manifestly aid the convenience of the witnesses. *See W.P.V.*, 2023 WL 1991426, at *4.

By contrast, there appear to be few, if any, witnesses located in New York, other than Plaintiffs themselves. And while courts sometimes presume that government employees are considered "available" throughout the country, that presumption carries less weight where none of the government employees with personal knowledge of the relevant facts is named as an individual defendant. *Barry v. United States*, No. 21-cv-7684 (BCM), 2022 WL 4467504, at *6 (S.D.N.Y. Sept. 26, 2022); *see also W.P.V.*, 2023 WL 1991426, at *4. Nor does that presumption mitigate the Government's burden to produce numerous witnesses for deposition and trial in New York. Accordingly, this factor weighs strongly in favor of transfer.

### 2. The Operative Facts Occurred in Texas, Favoring Transfer

"The locus of the operative facts is a primary factor in determining a § 1404(a) motion to transfer." *Alpha Indus., Inc. v. Alpha Clothing Co., LLC*, No. 21-cv-87 (KPF), 2021 WL 2688722, at *6 (S.D.N.Y. June 30, 2021). The locus of operative facts and the location of material witnesses "bear on where the 'center of gravity' of the action rests." *Id.*; *see also Guccione v. Harrah's Mkt'g Servs. Corp.*, No. 06-cv-4361 (PKL), 2009 WL 2337995, at *8 (S.D.N.Y. July 29, 2009) ("Courts traditionally give significant weight to the locus of the operative facts of a case, and routinely transfer cases when the principal events occurred in another district and the principal witnesses are located there." (internal citations omitted)). "To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises." *Guccione*, 2009 WL 2337995, at *8 (internal quotations omitted). In this action, which arises from Plaintiffs' unlawful entry into the United States at the Texas border and their ensuing separation in Texas, Texas is the locus of operative facts. As the court in *W.P.V.* found under analogous circumstances, "the operative events

that involve the Government and trigger its potential liability under the FTCA predominantly, if not entirely, occurred in the Western District of Texas." 2023 WL 1991426, at *6.

### 3.      The Convenience of the Parties Is a Neutral Factor

Texas would be the more convenient forum for Defendant given that the operative facts occurred in Texas, and many of the relevant federal witnesses with knowledge of the facts would be located in or near Texas. *See* Davies Decl. ¶ 17; Ramirez Decl. ¶ 12. Transferring this action to Texas would therefore allow those individuals to provide testimony without the need for significant additional travel or time away from their work at the border. *See* Davies Decl. ¶ 18.

While Plaintiffs live in this district, and it would thus presumably be more convenient for them to litigate in this district, that fact alone does not defeat transfer, particularly in light of the centrality of Texas to this action. *See, e.g.*, *Barry*, 2022 WL 4467504, at *5-6 (transferring FTCA action arising from minor's immigration-related detention to Texas, where relevant events occurred and where government witnesses were located, notwithstanding the fact that plaintiff subsequently moved to New York, lived there for over two years, and retained residency in New York); *Larca v. United States*, No. 11-cv-3952 JMF, 2012 WL 6720910, at *3 (S.D.N.Y. Dec. 16, 2012) (transferring FTCA medical malpractice action to forum where the alleged misconduct primarily took place and rejecting plaintiff's argument that his forum choice ought to be dispositive, because "little or nothing connects this case to New York other than Plaintiff's domicile"); *Burgos v. United States*, No. 16-cv-7091 (RA), 2017 WL 2799172, at *3 (S.D.N.Y. June 27, 2017) (same).

### 4.      The Plaintiffs' Choice of Forum Has Diminished Weight Here

A plaintiff's choice of forum is ordinarily entitled to some deference; however, the significance of this factor is considerably diminished where, as here, the acts or omissions purportedly giving rise to liability occurred elsewhere. *See, e.g.*, *Rindfleisch*, 752 F. Supp. 2d at

251 (collecting cases); *see also W.P.V.*, 2023 WL 1991426, at *7 (explaining that deference to plaintiffs' choice of forum is "significantly diminished where, as here, the operative facts have no connection to the chosen district." (internal quotations omitted)). In addition, courts ascribe this factor less weight than in the context of a *forum non conveniens* motion because the result is simply the transfer of venue, not dismissal of the complaint. *See Jones v. U.S.*, No. 02-cv-1017(JG), 2002 WL 2003191, at *3 (E.D.N.Y. Aug. 26, 2002).

The Eastern District of New York is not the district where the acts or omissions complained of took place. As a result, Plaintiffs' choice of forum is entitled to diminished weight, and the Court should not ascribe it much deference. *See W.P.V.*, 2023 WL 1991426, at *7; *Barry*, 2022 WL 4467504, at *5-6; *Larca*, 2012 WL 6720910, at *3; *Burgos*, 2017 WL 2799172, at *3.

### 5.      The Availability of Compulsory Process Favors Transfer

Because a subpoena may only command a person's attendance at trial or a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person," Fed. R. Civ. P. 45(c)(1), the Court must consider whether transfer will have an impact on its ability to compel the attendance of unwilling witnesses. *Hernandez*, 761 F. Supp. at 990. Here, many of the witnesses with firsthand knowledge of Plaintiffs' allegations work in or near Texas, where Plaintiffs' separation occurred, which is more than 100 miles from the Eastern District of New York. *See* Davies Decl. ¶ 17; Ramirez Decl. ¶ 12. And while the Court could compel current federal employees to travel from Texas to New York, the allegations here are roughly five years old, and federal employees with knowledge of the facts could in the future leave government service. If that were to happen, the Court would be unable to compel those witnesses to attend trial. Additionally, to the extent non-governmental witnesses—including employees of independent contractors—continue to reside in Texas, this Court would likewise be unable to compel their attendance at trial. As a result, this factor favors transfer. *See Hernandez*, 761 F. Supp. at 990

(finding that availability of compulsory process favored transfer where most non-party witnesses resided in Florida rather than New York).

6.       **The Means of the Parties Is a Neutral Factor**

The relative means of the parties is ordinarily not considered unless litigating in the proposed forum would be "prohibitively expensive" or "unduly burdensome" to Plaintiffs' finances. *Rindfleisch*, 752 F. Supp. 2d at 260-61; *see also Alpha Indus.*, 2021 WL 2688722, at *10 ("A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances."). Plaintiffs have made no such claim, and notably, Plaintiffs are represented by a large international law firm with three separate offices *in Texas. See* https://www. quinnemanuel.com/ offices/.

7.       **The Forum's Familiarity with Governing Law Favors Transfer**

Under the FTCA, the court must apply the substantive law of the state where the alleged tortious act or omission occurred. *See* 28 U.S.C. § 1346(b); *see also FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State – the source of substantive liability under the FTCA."). As noted above, Plaintiffs' purported claims arise from their separation from one another in Texas, not any tort in New York. Consequently, Texas law would presumably apply. *See W.P.V.*, 2023 WL1991426, at *7 (explaining that this factor favored transfer where court "would most likely apply Texas tort law to Plaintiffs' claims against the Government concerning their initial apprehension, detention, and separation – all of which occurred in Texas."). While this Court is, of course, not precluded from applying Texas law, a federal court sitting in Texas would have more familiarity doing so. *See Jones*, 2002 WL 2003191, at *4 (transferring matter where "[a] federal district court sitting in Georgia would certainly be more familiar with Georgia law than a district court sitting in New York."); *accord Barry*, 2022 WL 4467504, at *7 (noting that transfer to Texas would be "more

efficient" where Texas law applied). Thus, this factor favors transfer.

## 8.  Judicial Economy and the Interests of Justice Favor Transfer

Finally, courts consider whether, based on the totality of the circumstances, the interests of justice and judicial economy support transfer. Courts often find that this factor favors transfer when a "case is still in its early stages and minimal discovery ha[s] taken place." *Neil Bros.*, 425 F. Supp. at 334; *accord Barry*, 2022 WL 4467504, at *8 (noting that there would be "little loss in judicial economy" by transferring action because the case was at its "earliest stages."). In addition, the interests of justice are better served by transferring this action to its center of gravity, where the operative facts took place and where many witnesses are likely to be found. *See Alpha Indus.*, 2021 WL 2688722, at *8. This factor therefore favors transfer.[5]

## II.  IN THE ALTERNATIVE, DISMISSAL IS WARRANTED FOR LACK OF SUBJECT MATTER JURISDICTION

Were the Court not to transfer this action, it should be dismissed for lack of subject matter jurisdiction. The current Administration has disavowed policies during the prior Administration that resulted in the separations of families. This case, however, arises from a separation that occurred prior to the adoption of those policies. And, in any event, Congress has not waived the United States' sovereign immunity with respect to claims arising from those policies.

"It is 'axiomatic' under the principle of sovereign immunity 'that the United Sates may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'" *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)) (collecting cases); *see also Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255,

---

[5] With the rise of electronic discovery, courts in evaluating transfer motions have recently concluded that the location of paper documents and databases "bears little relationship to the ease or difficulty of conducting discovery." *Barry*, 2022 WL 4467504, at *6. This factor is therefore neutral in the transfer analysis. *See Monfried v. Sigma Fin. Corp.*, No. 15-cv-2806 (VSB), 2016 WL 9724977, at *4 (S.D.N.Y. June 14, 2016).

260 (1999) ("'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994))). The waiver "must be 'unequivocally expressed' in statutory text, and cannot simply be implied." *Adeleke*, 355 F.3d at 150 (quoting *United States v. Nordic Vill., Inc.,* 503 U.S. 30, 33 (1992)). Even when the United States does waive its immunity from suit, "limitations and conditions upon which the Government consents to be sued must be strictly observed, and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981); *see Nordic Vill., Inc.*, 503 U.S. at 33-34 (citations and quotation marks omitted) (stating that waivers of sovereign immunity "must be unequivocally expressed" and are "construed strictly in favor of the sovereign").

## A.      Legal Standard Governing Motions Pursuant to Fed. R. Civ. P. 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when "the district court lacks the statutory or constitutional power to adjudicate it.'" *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(l), the court must accept all material factual allegations in the complaint as true but should not draw inferences favorable to the plaintiff. *Lihua Jiang v. Clinton*, No. 08-cv-4477, 2011 WL 5983353, at *2 (E.D.N.Y. Nov. 28, 2011) (Garaufis, J.). The plaintiff bears the burden of showing, by a preponderance of the evidence, that the court has subject-matter jurisdiction over his or her claims. *Makarova*, 201 F.3d at 113.

## B.      The Discretionary Function Exception Bars Plaintiffs' Claims

In enacting the FTCA, Congress consented to a limited waiver of sovereign immunity, *see Coulthurst v. United States*, 214 F.3d 106,108 (2d Cir. 2000), while specifically carving out exceptions for which sovereign immunity has not been waived, *see* 28 U.S.C. § 2680. One of these exceptions, the DFE, provides that the Government has not waived sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary

function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of the DFE is "to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 808, 814 (1984); *see also Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988).

A court's determination as to whether the DFE shields the government from liability involves a two-step analysis derived from two Supreme Court cases: *Berkovitz*, 486 U.S. at 531, and *United States v. Gaubert*, 499 U.S. 315 (1991). According to the *Berkovitz-Gaubert* test, the DFE bars suit only if two conditions are met:

> (1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis.

*Coulthurst*, 214 F.3d at 109 (citing *Berkovitz*, 486 U.S. at 536; *Gaubert*, 499 U.S. at 322-23). As to the second prong, "[t]he focus of the inquiry is *not* on the agent's *subjective intent* in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are *susceptible to* policy analysis." *Gaubert*, 499 U.S. at 325 (emphases added).

In evaluating the applicability of the DFE under the first prong of the *Berkovitz-Gaubert* test, courts evaluate whether legal authority afforded the government officials the discretion to act as they did *at the time of the conduct*, not in light of subsequent court decisions. *Campos v. United States,* 888 F.3d 724, 735 (5th Cir. 2018) (DFE "exists to leave sovereign immunity in place unless the official had clear guidance on what to do" in the relevant circumstances); *cf. Shivers v. United States*, 1 F.4th 924, 931 (11th Cir. 2021) (rejecting argument that Eighth Amendment violation precluded application of DFE and noting the absence of specific prohibition as to challenged conduct), *cert. denied*, 142 S. Ct. 1361 (2022).

Here, the Government's alleged conduct—in referring Leticia for prosecution for unlawful entry, detaining her pending the resolution of her immigration court proceedings, and day-to-day management and operational decisions in detention facilities (to the extent made by federal employees rather than independent contractors)—satisfies both steps of the analysis.

1.     **The DFE Bars Claims Arising from Leticia's Referral for Prosecution**

The decision to refer Leticia for prosecution for unlawful entry, which resulted in the separation of Plaintiffs, was plainly a discretionary decision susceptible to policy analysis, and thus the DFE bars Plaintiffs' IIED, negligence, and abuse of process claims arising from this prosecution and Plaintiffs' resulting separation.

It is well established that the Government's determination as to whether to prosecute is a discretionary determination, thus satisfying the first prong of the *Berkovitz-Gaubert* test. The Supreme Court has recognized that the Attorney General and United States Attorneys "retain broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted); *see also In re United States*, 945 F.3d 616, 627 (2d Cir. 2019) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.") (citation omitted); *United States v. Jennings*, 652 F.3d 290, 300 (2d Cir. 2011) ("Article II of the Constitution gives the Executive Branch of the government exclusive authority and absolute discretion to decide whether to prosecute a case") (internal quotation marks and citation omitted); *Blanco Ayala v. United States*, 982 F.3d 209, 217 (4th Cir. 2020) (noting that "[d]iscretion lies at the heart of the DHS law enforcement function" and, in exercising this function, DHS agents must make "the kinds of classic judgment calls the discretionary function exception was meant to exempt from tort liability."). Further, with respect to the second prong of the *Berkovitz-Gaubert* test, courts also

recognize that prosecutorial decisions are deeply rooted in important policy considerations. *See Blanco Ayala*, 982 F.3d at 217 (recognizing that prosecutorial decisions in immigration context are "infused with public policy considerations" and collecting cases).

Indeed, a recent decision, *S.E.B.M. by & through Felipe v. United States*, No. 1: 1:21-cv-00095 (JHR)(LF), 2023 WL 2383784, (D.N.M. Mar. 6, 2023), is instructive. There, as here, an FTCA suit grounded in an allegedly tortious family separation upon a parent's referral for prosecution was dismissed on the basis of the DFE. *Id.* at *15. There, the court concluded that the decision to prosecute is "perhaps the prototypical discretionary function the [DFE] is intended to protect from liability." *Id.* at *14. Here, too the Court should similarly conclude. *See also Caronia v. United States*, No. 13-cv-5758 (FB), 2015 WL 4872558, at *5 (E.D.N.Y. Aug. 13, 2015) ("Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception." (quoting *Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983))), *aff'd sub nom. Caronia v. Orphan Med., Inc.*, 643 F. App'x 61 (2d Cir. 2016); *see also Wang v. United States*, No. 01-cv-1326 (HB), 2001 WL 1297793, at *4 (S.D.N.Y. Oct. 25, 2001) (DFE applied to prosecution decision notwithstanding allegations that "prosecutors were motivated by 'political and ideological reasons'" and noting that "the [DFE] is indifferent to the government actor's motivation"), *aff'd*, 61 F. App'x 757 (2d Cir. 2003).

Plaintiffs' separation occurred as a result of Leticia's referral for prosecution. Thus, Plaintiffs' claims challenging their separation, which arise from Leticia's referral for prosecution, are barred by the DFE. As another court concluded in dismissing an FTCA action arising from the plaintiff's separation from his family following his arrest for illegal entry, "the decision to

prosecute rests in the absolute discretion of the United States Attorney General, and once the discretionary decision to prosecute is made, the separation of prisoners from their families is plainly legal." *Peña Arita v. United States*, 470 F. Supp. 3d 663, 686 (S.D. Tex. 2020); *see also S.E.B.M.*, 2023 WL 2383784, at *15 ("[T]he government's prosecution of S.E.B.M.'s father, which immediately caused her to be separated from him, was a discretionary decision that violated no federal law cited by the parties and which was protected from liability by the [DFE]").

### 2. The DFE Bars Claims Arising from Leticia's Detention

The DFE also independently applies to and bars Plaintiffs' IIED, negligence, and abuse of process claims to the extent that they arise from the Government's decision to detain Leticia pending her immigration court proceedings, and its decisions as to where to detain her during that time frame. *See* Cplt. ¶¶ 106-119.

As to the first DFE prong, the Government has discretion whether to detain, and to decide where to detain, a noncitizen in connection with removal proceedings. *See, e.g.*, *Nielsen v. Preap*, 139 S. Ct. 954, 959 (2019) (8 U.S.C. § 1226(a) "sets out the general rule regarding [the] arrest and detention [of most noncitizens] pending a decision on removal" and generally "gives the Secretary the discretion either to detain the alien or to release him on bond or parole."). "Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary of Homeland Security]." *Cmtte. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986); *see also* 8 U.S.C. § 1231(g) ("The [Secretary] shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal.").

Moreover, as to the second DFE prong, detention decisions, like decisions to prosecute, are also "susceptible to" important policy considerations. Decisions relating to placement and detention in the immigration context are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government

as to be largely immune from judicial inquiry or interference." *Cmtte. Of Cen. Am. Refugees*, 795 F.2d at 1440 (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580 (1951)); *see also Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (decisions regarding whether to detain or release are policy-based decisions protected by the DFE); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Wood v. United States*, 175 Fed App'x 419, 420 (2d Cir. 2006) ("[T]he Attorney General, in the exercise of his statutory discretion in light of the available facilities, determined to hold [petitioner] in an Arizona detention center.").This discretion necessarily encompasses decisions regarding with whom a noncitizen will be detained, including whether an adult and a minor can be detained in the same facility and whether to detain family members together. *Peña Arita*, 470 F. Supp. 3d at 691-92 (decisions by DHS to separate family members protected by DFE).

Thus, while Plaintiffs challenge their continued separation during Leticia's detention while her immigration court proceedings were pending, and thus her inability to apply to sponsor Yovany as a parent within the United States, *see* Cplt. ¶¶ 77-78, their claims are barred because the Government's decision to detain rather than to release Leticia, and its decision where to detain her, were discretionary decisions susceptible to policy analysis. *See Peña Arita*, 470 F. Supp. 3d at 691–92 (holding, in FTCA action, decisions by DHS concerning where to house noncitizens are protected by the DFE, even if those decisions resulted in the separation of family members).

The discretionary function exception also covers the determination that Yovany was an "unaccompanied alien child" within the meaning of the TVPRA. *See* 6 U.S.C. § 279(g)(2). Whether a parent is "available to provide care and physical custody" is a policy question vested in federal officials. *See D.B. v. Preston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as

unaccompanied alien children.*"), aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016); *see also Baie v. Secretary of Def.*, 784 F.2d 1375, 1377 (9th Cir. 1986) ("interpretation of the statute is a plainly discretionary administrative act the 'nature and quantity' of which Congress intended to shield from liability under the FTCA"); *Villanueva v. United States*, 708 F. Supp. 2d 960, 975 (D. Ariz. 2009) ("An agency's interpretation of its statutes and regulations is protected by the [DFE]."). The DFE accordingly protects the government's determination after Leticia was referred for prosecution that Yovany be designated unaccompanied such that, as a UAC, he was required to be transferred to ORR custody. *See* 8 U.S.C. § 1232(b)(3).

### 3. Plaintiffs' Challenges to the Conditions of Their Confinement Are Barred by the DFE

Plaintiffs also challenge certain aspects of their conditions of confinement, including the frequency of communications between Plaintiffs and overcrowding (*id.*, ¶¶ 30-31, 113). To the extent these acts were performed by government officials, rather than independent contractors (*but see infra* Part II.D), these claims are barred by the DFE. As numerous courts have recognized, the manner in which the Government manages and operates its detention facilities involves discretionary decisions susceptible to policy considerations. *See Huff v. Neal*, 555 F. App'x 289, 298–99 (5th Cir. 2014) (per curiam) (DFE applied to placement of inmates and internal prison security); *Patel v. United States*, 398 F. App'x 22, 29 (5th Cir. 2010) (per curiam) (DFE applied to decision to transfer prisoner); *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Lineberry v. United States*, 3:08-cv-0597, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) (allegation of overcrowding in prison barred by DFE); *Antonelli v. Crow*, 08-261, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which conditions of confinement claims were barred by the DFE).

Thus, in *Peña Arita*, also an FTCA case arising from a family separation, the court concluded that the DFE barred plaintiffs' conditions of confinement claims, including those arising out of the manner in which one of the plaintiffs was housed. Such actions are "susceptible to policy analysis," and the court "must generally defer to the expertise of prison officials and is not to substitute its judgment for the considerations of such officials." 470 F. Supp. 3d at 691. *See also S.E.B.M.*, 2023 WL 2383784, at \*16 (rejecting challenge to government's conduct in providing only short calls between plaintiffs, a father and daughter who were separated, noting that *Flores* agreement "provides no time parameters for how long or frequent calls between children and their family members should be . . . likely because immigration detention involves unique security concerns that makes it difficult for detainees to be available for regular calls and thus flexibility is necessary."); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) (BOP's provision of telephone services is "a matter committed to its discretion that will not be second-guessed through an FTCA claim").

### 4.     Allegations of Unconstitutional Conduct Do Not Foreclose The DFE

The discretionary conduct at issue in this case does not become the basis of an FTCA claim merely because Plaintiffs allege that conduct also constituted constitutional violations. *See* Cplt. ¶¶ 98-105. Congress did not create the FTCA to address constitutional violations, but rather to address violations of state tort law committed by federal employees. *See Meyer*, 510 U.S. at 477 ("§ 1346(b) does not provide a cause of action for" a "constitutional tort claim").

A plaintiff cannot avoid the limits of the FTCA—and, in particular, the DFE—merely by contending that the government has no discretion to violate the Constitution. The DFE does not admit of such a simplistic analysis; as the Court explained in *Gaubert*, the exception does not apply where "a federal statute, policy, or regulation specifically prescribes a course of action for an employee to follow," for in that situation, there is no further discretion to exercise. 499 U.S. at

322. The analysis for alleged violations of constitutional norms should be the same. In some cases, the Constitution (either by its text or by judicial decision) may establish such a clear and specific prescription that it removes an official's discretion, but the requirement of specificity must be present with the same force whether the prescription is found in the Constitution or a statute—and must have been present when the challenged official action took place.[6]

For this reason, numerous courts have found claims barred by the DFE, notwithstanding an allegation that the challenged conduct was unconstitutional, where there was no sufficiently specific prohibition barring the challenged conduct at the time that conduct occurred. *See, e.g.*, *Shivers*, 1 F.4th at 931 (holding that DFE applied notwithstanding allegation of Eighth Amendment violation and stressing that "only when a federal employee acts contrary to a <u>specific</u> <u>prescription</u> in federal law—be it a statute, regulation, or policy—does the discretionary function exception not apply") (emphasis in this original), *cert. denied*, 142 S. Ct. 1361 (2022); *McElroy v. United States*, 861 F. Supp. 585, 593 (W.D. Tex. 1994) ("[T]he statutory or constitutional mandate that eliminates

---

[6] Although the Second Circuit, in *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1261 (2d Cir. 1975), stated that officials have no discretion to violate the constitution, that case did not address whether decisions about the constitutionality of discretionary conduct preclude the DFE where those decisions post-dated the conduct at issue such that the law *at the time of the conduct* was insufficiently specific. In any event, the *Shivers* approach – set forth in the text above – is the most consistent with the doctrine of sovereign immunity as well as the text and purpose of the FTCA. First, "[w]hen waiving the Government's sovereign immunity, Congress must speak unequivocally." *F.A.A. v. Cooper*, 566 U.S. 284, 299 (2012). The waiver "must be 'unequivocally expressed' in statutory text, and cannot simply be implied." *Adeleke*, 355 F.3d at 150 (quoting *Nordic Vill., Inc.*, 503 U.S. at 33). The FTCA's DFE provision contains no carve-out for conduct *later* determined by some courts to be unconstitutional. Second, even if it did, which it does not, it is beyond question that the FTCA does not waive sovereign immunity for "constitutional torts." *See, e.g., Hernandez v. United States*, 939 F.3d 191, 205 (2d Cir. 2019); *Meyer*, 510 U.S. at 477; *see also Butz v. Economou*, 438 U.S. 478 (1978) (observing that "no compensation would be available from the Government" in suits alleging that officials' discretionary conduct violated the Constitution, because the FTCA "prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused."); *Shivers* 1 F. 4th at 931 ("[T]he FTCA is not based on alleged constitutional violations, and a plaintiff cannot circumvent the limitations on constitutional tort actions under *Bivens*—including the qualified-immunity doctrine—by recasting the same allegations (1) as a common-law tort claim under the FTCA that is not subject to the discretionary function exception or (2) as negating the discretionary function defense."). Indeed, as the Second Circuit recognized, "[t]he House Report accompanying the bill that became the FTCA included the specific statement that it is neither 'desirable [n]or intended that the constitutionality of legislation, or the legality of a rule or regulation, should be tested through the medium of a damage suit for tort.'" *C.P. Chem. Co. v. United States*, 810 F.2d 34, 36–37 (2d Cir. 1987) (citing H.R.Rep. No. 1287, 79th Cong., 1st Sess. 6 (1945) among other components of the FTCA's legislative history).

discretion must be specific and intelligible so that the officer[] knows or should know he loses discretion when the particular circumstances arise which the mandate controls."); *Garza v. United States*, 161 F. App'x 341, 343–44 (5th Cir. 2005) (rejecting allegation that Eighth Amendment violation precluded application of DFE, and instead deciding to "join [its] sister circuits in recognizing that … the Eighth Amendment's prohibition against cruel and unusual punishment [does not] define a non-discretionary course of action specific enough to render the discretionary function exception inapplicable"); *Campillo v. U.S. Penitentiary Beaumont, Tex.*, 203 F. App'x 555 (5th Cir. 2006) (per curiam) (same); *Linder v. United States*, 937 F.3d 1087, 1090 (7th Cir. 2019) (prosecutorial decisions protected by discretionary function exception notwithstanding subsequent district court decision dismissing indictment on the basis of Sixth Amendment violation); *Kiiskila v. United States*, 466 F.2d 626, 627-28 (7th Cir. 1972) (DFE applied to military base commander's decision to prohibit civilian employee entering base notwithstanding later determination that decision violated First Amendment).

Here, Plaintiffs have failed to allege the violation of any constitutional provision with the degree of specificity required by *Gaubert*. Nor do they allege a violation of a specific constitutional right that was clearly established at the times relevant to their complaint. Plaintiffs allege that their substantive due process right to family integrity was violated, *see* Cplt. ¶¶ 99-101, but they point to no decision clearly establishing that such a right was absolute in the immigration context at the time of the separation. *See S.E.B.M.*, 2023 WL 2383784, at *15 ("Although S.E.B.M.'s right to associate with her father is constitutionally protected, it does not outweigh the government's interest in enforcing its immigration policy."); *see also, e.g.*, *Gordon v. Mule*, 153 Fed. Appx. 39 (2d Cir. 2005) (holding that right to family unity was not violated when petitioner, a parent of a U.S. citizen, was ordered removed after conviction of crime); *Reyna as next friend of J.F.G. v.*

*Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) ("[W]e . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal."); *Aguilar v. ICE*, 510 F.3d 1, 6 (1st Cir. 2007) (holding, in case challenging an unannounced ICE raid which rendered a substantial number of minor children left without adult supervision, that "the evenhanded enforcement of the immigration laws, in and of itself, cannot conceivably be held to violate substantive due process" and that "[a]ny interference with the right to family integrity alleged here was incidental to the government's legitimate interest in effectuating detentions pending the removal of persons illegally in the country"); *Delgado v. INS*, 637 F.2d 762, 763 (10th Cir. 1980) (separation of a parent from child incidental to the parent's deportation does not violate either's constitutional rights).

At most, Plaintiffs have pointed to *subsequent* district court decisions concluding that the prior Administration's policies resulting in family separations were unconstitutional. In evaluating the DFE under the first prong of the *Berkovitz-Gaubert* test, courts evaluate whether, *at the time of the conduct*, the law afforded officials the discretion to act as they did, not in light of subsequent court decisions. *See supra* at 20. Whether, in retrospect, those policies—which postdate the separation here—violated a constitutional right has no bearing on the application of the DFE in this case. For similar reasons, Plaintiffs' allegation of a procedural due process violation based on a district court decision *postdating* the separation here, *see* Cplt. ¶¶ 104-05, is unavailing.

Plaintiffs' allegations of an equal protection violation, *see* Cplt. ¶¶ 102-03, fare no better. Plaintiffs allege that their separation was "motivated by discriminatory animus towards Latino immigrations of Central American origin," *id.*, but Plaintiffs must allege "intentional discrimination," not simply that they were affected more than members of another race. *Washington v. Davis*, 426 U.S. 229, 241 (1976). Plaintiffs' equal protection theory has been

rejected by the Supreme Court in *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891, 1915 (2020). There, the Court rejected the plaintiffs' argument that the rescission of the Deferred Action for Childhood Arrivals program was based on racial animus, as evidenced by the rescission's disparate impact on Latinos from Mexico. *See id.* at 1915-16. The Court explained that, because Latinos make up a large share of unauthorized noncitizens, it would not be surprising if they were affected in greater proportion by the rescission. *See id.* The Court added that "[w]ere this fact sufficient to state a claim, virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Id.*; *see also United States v. Lucas-Hernandez*, No. 19-24522, 2020 WL 6161150, at *3 (S.D. Cal. Oct. 21, 2020) (rejecting equal protection claim where plaintiff attempted to show racial animus by pointing to disparate impact on Latinos because "[t]he disparate impact is more readily explained by the geographic proximity of the border to Mexico and Latin America than by animus"). Thus, *Regents* squarely forecloses Plaintiffs' equal protection theory.

Plaintiffs' allegations of unconstitutionality do not bar the application of the DFE here.[7]

## C.     The Exception for Actions Taken While Reasonably Executing the Law Bars Claims Arising from Transfer to ORR Custody

Alternatively, to the extent Plaintiffs frame their IIED, negligence, and abuse of process claims as challenging the government's nondiscretionary decision to transfer Yovany to ORR custody upon his designation as a UAC,[8] such challenge is barred by the FTCA's exception for

---

[7] In other cases, district courts have held that the DFE is inapplicable because the plaintiffs allege that the Constitution was violated. *See, e.g.*, *A.P.F. v. United* States, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020). But those cases failed to follow the rule, established in *Gaubert*, that an official loses discretion only if a source of law "specifically prescribes" the course of conduct. *See Gaubert*, 499 U.S. at 322 (1991). Here, the Complaint points to no authority specifically proscribing, at the relevant time, the referral to prosecution, decisions as to whether and where to detain, referral to ORR as a UAC, and, to the extent not barred by the independent contractor exception, the number of calls between Leticia and Yovany.

[8] And to the extent that the Court finds that the prosecution referral, being discretionary, does not also preclude under the DFE this conduct arising therefrom.

actions taken while reasonably executing the law.

In addition to carving out claims based on discretionary conduct from the FTCA's waiver of sovereign immunity, Congress also carved out any claim "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). This provision "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *Clayton v. United States*, 2019 WL 9283977, at *5 n.22. *See also C.P. Chem. Co., Inc. v. United States*, 810 F.2d 34, 38 (2d Cir. 1987) ("It is clear that § 2680(a) was intended to protect the validity of governmental regulations from challenge in a tort action for damages.").

Here, the exception bars Plaintiffs' IIED, negligence, and abuse of process claims to the extent Plaintiffs challenge Yovany's transfer to ORR custody. As a result of Leticia's referral for prosecution and related detention in a secure facility, she was unable to provide for Yovany's care and physical custody, and the Government determined in its discretion that Yovany was a UAC. *See* 6 U.S.C. § 279(g)(2). Next, as a consequence of Yovany being a UAC, the TVPRA required Yovany's transfer to ORR custody. The TVPRA requires that "any department or agency of the Federal Government that has an unaccompanied alien child in custody shall transfer the custody of such child to [ORR custody] not later than 72 hours after determining that such child is an unaccompanied alien child." 8 U.S.C. § 1232(b)(3); *see also* 6 U.S.C. §§ 279(b)(1)(A) (ORR tasked with "the care and placement of [UACs] who are in Federal custody by reason of their immigration status"). ORR in turn must place UACs "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). Pursuant to this requirement, ORR generally places minors in its custody into ORR-funded, state-licensed care provider facilities while attempting to unify minors with a sponsor. *See* De La Cruz Decl. ¶ 1.

Thus, Plaintiffs' challenge to the Government's transfer of Yovany to ORR custody pending his reunification with a sponsor, which it was required to do, is not cognizable under the FTCA. *See S.E.B.M.*, 2023 WL 2383784, at *16 (dismissing under the due care exception a FTCA claims for IIED and negligence CBP's arising from UAC determination as to minor, which had been predicated on father's detention, notwithstanding plaintiff's allegation that the government failed to use due care to minimize the trauma arising from separation).

### D. The Independent Contractor Doctrine Bars Plaintiffs' Negligence, IIED, and Assault and Battery Claims Arising From Alleged Conduct and Conditions at West Texas Detention Center and Casa Kokopelli

To the extent that Plaintiffs argue that their IIED, negligence, or assault and battery claims arise from conduct or conditions that Plaintiffs allegedly experienced at the West Texas Detention Facility and/or Casa Kokopelli, both of which Plaintiffs concede are privately run entities, *see* Cplt. ¶¶ 34-52; 59-73, those claims are barred by the independent contractor exception to the FTCA. Accordingly, assuming that the Court finds that these claims are not barred by the DFE or the exception for actions taken while executing the law, the Court nonetheless lacks jurisdiction.

The FTCA does not waive sovereign immunity for torts committed by independent contractors. 28 U.S.C. § 2671 ("does not include contractors with the United States"); *United States v. Orleans*, 425 U.S. 807, 813-14 (1976); *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997); *Korotkova v. United States*, 990 F. Supp. 2d 324, 327 (E.D.N.Y. 2014). Whether one "is a government employee or an independent contractor is a question of federal law." *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990) (citing *Logue v. United States*, 412 U.S. 521, 528 (1973)). The "critical element" is whether the government has the power to "to control the detailed physical performance of the contractor," *Orleans*, 425 U.S. at 807 (quoting *Logue*, 412 U.S. at 528), and to supervise "day-to-day operations." *Id.* at 815.

Here, to the extent that Plaintiffs premise their IIED, negligence, or assault and battery claims on conduct—namely, the maintenance of conditions of confinement—that allegedly occurred at privately run detention facilities, *see* Cplt. ¶¶ 107, 113, those claims are barred. The Complaint alleges that from approximately November of 2017 until her deportation on June 18, 2018, Leticia was housed in "the West Texas Detention Facility in Sierra Blanca, Texas, which is operated by the private contractor LaSalle Corrections." Cplt. ¶¶ 34, 38-42. Leticia alleges that during her detention at this facility, staff members refused to provide her with information regarding Yovany. Cplt. ¶ 40. Leticia also alleges that conditions at the West Texas Detention Center were unsanitary, that she lacked appropriate quantities of personal hygiene items, that she was subjected to discourteous and ridiculing conduct by staff, and that food and water were provided, but unsatisfactory. Cplt. ¶¶ 49-52.

In a similar vein, Plaintiffs allege that while at Casa Kokopelli, a shelter for unaccompanied children located in Mesa, Arizona, and operated by Southwest Key, Yovany was subjected to "unsanitary and harsh" conditions, specifically "extremely low" temperatures and long waits "with other kids" to be escorted by staff to restrooms, which were allegedly "unsanitary and not adequately cleaned." Cplt. ¶¶ 59-73. Yovany alleges that staff members did not provide him information about his mother, although Plaintiffs acknowledge that staff helped to locate his mother and facilitated communication by telephone. Cplt. ¶¶ 68-69, 73.

Plaintiffs acknowledge that these facilities were privately run entities. *See* Cplt. ¶¶ 34, 59. The Complaint is devoid of factual allegations giving rise to any inference, let alone a plausible inference, that the Government supervised the day-to-day operations of West Texas Detention Facility or Casa Kokopelli such that their staff members were acting within the scope of federal employment within the meaning of the FTCA. This alone is a fatal deficiency in Plaintiffs' case.

In short, even assuming, for purposes of this motion, that Plaintiffs' allegations about their conditions of confinement are true, such cannot give rise to liability under the FTCA.[9] *Walding v. United States,* 955 F. Supp. 2d 759, 804 (W.D. Tex. 2013) (holding that the independent contractor exception barred negligence claim against the United States based on an alleged failure to maintain a safe and healthy detention facility for minors housed pending immigration proceedings).

Therefore, this Court should dismiss these claims for lack of subject matter jurisdiction.

### E. Plaintiffs' Negligence and Abuse of Process Claims Are Not Cognizable Because There Is No Private Analogue

Plaintiffs' negligence and abuse of process claims also warrant dismissal because of the lack of a private analogue. The FTCA's waiver of sovereign immunity is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674. In other words, the waiver only applies to claims for which a private analogue exists. *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016); *see also Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (there is no liability under the FTCA based on "action of the type that private persons could not engage in and hence could not be liable for under local law").

The FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA [even] in the performance of activities which private persons do not perform." *Olson*, 546 U.S. at 46 (quotation omitted). "To satisfy the private analogue requirement, the plaintiff must show that his [or her] claim is comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred, and his [or her] allegations, taken as true, . . . satisfy the necessary elements

---

[9] To the extent Plaintiffs wish to assert such claims, their remedy is a suit against the independent contractors specifically, not against the United States. *Cf. W.P.V.*, 2023 WL 1991426 (family separation case in which plaintiffs named independent contractor as a co-defendant).

of that comparable state cause of action." *Carter v. United States*, 494 F. App'x 148, 149 (2d Cir. 2012) (quotation marks omitted); *see also McGowan*, 825 F.3d at 128 (dismissing negligence and false imprisonment claims because there is no private analogue under New York law).

Here, the relevant state law is that of Texas. Plaintiffs allege that their harms are based on the Government's decision in Texas to enforce federal immigration laws and to hold Leticia in custody in Texas pending prosecution and immigration proceedings in Texas, resulting in Yovany's placement in the custody of ORR. Cplt. ¶¶ 1, 23. Under Texas law, there is no private analogue to the federal government's responsibility for initiating removal proceedings against an individual who is unlawfully present and effectuating related detention. *See Lopez-Flores v. Ibarra*, No. 1:17-cv-00105, 2018 WL 6577955, at *4 (S.D. Tex. Mar. 12, 2018) (finding no private analogue for an abuse of process claim tied to coercive conduct and removal proceedings). Thus, the acts of detaining Plaintiffs in Texas after their initial unlawful entry in Texas, and prosecuting Leticia in Texas, to the extent they form the basis for Plaintiffs' negligence and abuse of process claims, have no private analogue.

In addition, and closely intertwined, Texas law does not impose a legal duty to prevent separation, such that the separation of Plaintiffs Leticia and Yovany would give rise to an analogous private negligence claim under Texas law. As one court recently found in assessing Texas law in the context of family separation, there is no private analogue to provide the necessary predicate for an FTCA claim for negligence, warranting dismissal of the negligence claim. *S.E.B.M.*, 2023 WL 2383784, at *9. In *S.E.B.M.*, like this case, the court addressed the separation of a father and two-year-old child after the father was prosecuted for unlawful entry and his child was placed into the care of ORR. *Id.* at *2. The district court determined that it lacked jurisdiction over the plaintiffs' negligence claim because, among other reasons, under Texas law, there was no

private analogue for negligence based on family separation. *Id.* at *9. As stated by the court, "[a]lthough there is no doubt that extended physical separation from a parent or relative at that age is psychologically harmful, S.E.B.M. does not show the Court any analogous legal duty to prevent it" under Texas (or New Mexico) law. *Id.* Similarly here, as a private person could not be found liable for negligence based upon the separation at issue, there is no private analogue.

### F.     The § 2680(c) Exception to the FTCA Bars The Conversion Claim

Plaintiffs' conversion claim—which is based on Leticia's alleged loss of personal property in connection with her initial detention by CBP officers—is independently barred by the FTCA's carve-out for claims relating to the "detention of goods" by customs or law enforcement officers. *See* 28 U.S.C. § 2680(c). The Supreme Court has broadly construed this exception as rendering the United States immune from "any claim 'arising out of the detention of goods'" including "a claim resulting from the negligent handling or storage of detained property." *Ford v. United States,* 85 F. Supp. 3d 667, 670-71 (E.D.N.Y. 2015) (applying exception to conversion claim arising from conduct of ICE officers) (citing *Kosak v. United States,* 465 U.S. 848, at 854 (1984)).

## III.     DISMISSAL IS WARRANTED FOR FAILURE TO STATE A CLAIM

Assuming *arguendo* that any part of the suit is neither transferred nor dismissed for lack of subject matter jurisdiction, the claims should still be dismissed for failure to state a claim. FTCA claims are governed by the law of the state where the tort occurred, *see* 28 U.S.C. § 1346(b)(1), and Plaintiffs have failed to state any actionable torts under the law of Texas (or, as relevant, Arizona),[10] which is where the putatively tortious conduct occurred.

### A.  Plaintiffs Fail to State a Claim for IIED

Assuming *arguendo* that the Court were to conclude that it had jurisdiction over the IIED

---

[10] Arizona law appears to apply to Plaintiffs' claims for negligence or assault and battery arising from Yovany's period of residence at Casa Kokopelli.

claim despite the application of the DFE, due care, and independent contractor exceptions to the FTCA, the IIED claim still warrants dismissal for failure to state a claim.

The elements of an IIED claim under Texas law are (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme or outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the plaintiff's resulting emotional distress was severe. *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993). The outrageous conduct element requires conduct that "goes beyond all possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* Under Texas law, courts must determine as a matter of law whether the alleged conduct may reasonably be regarded as so extreme and outrageous that it permits recovery. *Id.*

Here, Plaintiffs' IIED claim is alleged to be based primarily on their separation, which was a direct result of the enforcement of federal law. Cplt. ¶¶ 106-109. But, as a matter of Texas law, the enforcement of federal immigration law does not constitute extreme or outrageous conduct, even when it results in the separation of a parent from her child. *E.g., Dillard Dep't Stores v. Silva*, 106 S.W.3d 789, 797 (Tex. App.—Texarkana 2003, pet. granted) (where probable cause exists for an arrest, the decision to initiate criminal proceedings "cannot constitute outrageous behavior"), *aff'd in part, mod. in part on other grounds*, 148 S.W.3d 370 (Tex. 2004). Indeed, the risk of interference with the parent-child relationship is inherent to immigration detention. *See also Aguilar*, 510 F.3d at 22 (rejecting substantive due process claim based on family separation resulting from detention of a parent related to a removal proceeding, and noting that every such detention of a parent "runs the risk of interfering in some way with the parent's ability to care for his or her children"); *see also Payne-Barahona v. Gonzalez*, 474 F.3d 1, 3 (1st Cir. 2007) (holding that, if a child had a constitutional right to object to his parent's deportation, then it would be

"difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods where the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service").

To the extent the IIED claim is not based on Plaintiffs' separation but instead on Plaintiffs' allegations that various officials "engaged in insulting and taunting behavior," Cplt. ¶ 107, these allegations also fail to state an IIED claim. In the absence of allegations of physical contact, Texas law does not extend IIED liability to "insults" and "indignities." *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993).

Plaintiffs also cannot base an IIED claim on alleged conditions of confinement. Like the Second Circuit, the Fifth Circuit has recognized that "suits for violations of federal constitutional rights, even though tortious in nature, are not within the scope of the FTCA." *Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir. 1989); *see also Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994). Under Texas law, claims challenging conditions of confinement, like those here, might appear tortious in nature but they present, at bottom, constitutional challenges to conditions of confinement, and as such are not actionable under the FTCA. *Aguilar v. United States*, No. 1:16-CV-048, 2017 WL 6034652, at *4 (S.D. Tex. June 7, 2017).

Finally, as to all the grounds for the IIED claim alleged, the IIED claim warrants dismissal for another reason. In Texas, "the tort of IIED was intended to be "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Roe v. United States*, 839 F. App'x 836, 847 (5th Cir. 2020) (quoting *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004)). Here, Plaintiffs allege (albeit deficiently) that the Government's actions give rise to traditional tort liability, including

negligence, abuse of process, assault, battery, and conversion. When these tort claims are available (whether pled sufficiently or otherwise), IIED cannot lie. Thus, for this reason too, the IIED claim warrants dismissal as a matter of law.

### B. Plaintiffs Fail to State a Negligence Claim

To prevail on a negligence claim under Texas law, Plaintiffs must establish the existence of a duty, a breach of that duty, and physical injury supporting damages proximately caused by the breach. *Aguilar*, 2017 WL 6034652, at *3. The elements are the same under Arizona law. *Anderson v. Armour*, No. 16-cv-03563 (PHX)(JJT), 2021 WL 4950344, at *7 (D. Ariz. Oct. 25, 2021) (citing *Ryan v. Napier*, 245 Ariz. 54, 425 P.3d 230, 235 (Ariz. 2018)) ("To recover on a negligence claim in Arizona, a plaintiff must prove a duty requiring the defendant to conform to a standard of care; a breach of that duty; a causal connection between breach and injury; and resulting damages."). Here, Plaintiffs have not identified any duty under Texas or Arizona law to keep them together. *See S.E.B.M.* 2023 WL 2383784, at *9 (finding no such duty). To the extent the claim is based on conduct while Yovany was housed in Arizona from November 2017 until August 2018, the claim fails for another independent reason, in that Arizona law does not permit a negligence claim based on intentional conduct, *Nees v. City of Phoenix*, No. 21-cv-01134 (PHX)(GMS), 2022 WL 17976322, at *3 (D. Ariz. Dec. 28, 2022), and all of the acts alleged by Plaintiffs are intentional. In sum, the negligence cause of action, insofar as it arises from Plaintiffs' separation or alleged conditions of confinement, should be dismissed.

### C. Plaintiffs Fail to State Claims for Assault and Battery

Plaintiffs' assault and battery claims arising out of their conditions of confinement are also insufficient. Under Texas law, "[a]n assault occurs when a person is in apprehension of imminent bodily contact, whereas a battery is committed when an individual actually sustains a harmful or offensive contact to his or her person." *Aguilar*, 2017 WL 6034652, at *5 (citing *City of Watauga*

*v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014) (citation omitted)).” These torts have similar elements under Arizona law. *Phillips v. Lake Havasu City*, No. 2008-cv-131, 2022 WL 4367618, at *12 (D. Ariz. Sept. 21, 2022). Relatedly, under Texas law, conditions of confinement, however unpleasant, do not give rise to assault or battery claims. *Id.* (finding no actionable assault or battery claims arising from alleged conditions at a CBP detention facility including exposing detainees to, *inter alia,* constant light, cold temperatures, and inadequate food and water).

Here, Count IV of the Complaint, Cplt. ¶¶ 120-123, predicates the assault and battery claims on conditions of detention such as “freezing cold temperatures without [the provision] of dry clothes or other means of keeping warm.” Cplt. ¶ 121. Plaintiffs fail to identify the necessary “apprehension of imminent bodily contact” or “actually sustain[ing] a harmful or offensive contact to his or her person,” *Aguilar*, 2017 WL 6034652, at *5. To the extent that any of these conditions were endured by Plaintiffs while they were in the care of federal employees (and not independent contractors), they fail to state cognizable assault or battery claims as a matter of law. *See Aguilar*, 2017 WL 6034652, at *5 (dismissing assault and battery claims arising out of conditions of confinement, because that failed to state a claim under Texas law).

### D. Plaintiffs Fail to State a Claim for Abuse of Process

Plaintiffs’ abuse of process claim should also be dismissed as a matter of law. The elements of abuse of process under Texas law are: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage resulted to the plaintiff. *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994), writ denied (Nov. 16, 1995). Implicit in the elements is the requirement that the process in question be improperly used after it was issued. *Hunt v. Baldwin*, 68 S.W.3d at 130; *RRR Farms, Ltd. v. Am. Horse Prot. Ass’n, Inc.*, 957 S.W.2d 121, 133 (Tex. App.—Houston [14th

Dist.] 1997, pet. denied) *holding modified by Baty v. ProTech Ins. Agency*, 73 S.W.3d 841 (Tex. App—Houston [14th Dist.] 2001). Thus, under Texas law, there is an important corollary: "[w]hen the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs." *Roe v. United States*, 839 F. App'x 836, 846–47 (5th Cir. 2020) (quotation omitted). Instead, in that case, "[i]f wrongful intent or malice caused the process to be issued initially, the claim is instead one for malicious prosecution." *Id.* (quoting *Bossin,* 894 S.W.2d at 33)).

Here, Plaintiffs' abuse of process claim should be dismissed because they have not pled facts showing that any federal employee "made an illegal, improper, or perverted use of [] process, a use neither warranted nor authorized by the process." *Hunt*, 68 S.W.3d at 129. *See E.L.A. v. United States,* 2:20-cv1524-RAJ, 2022 WL 2046135, at *6 (W.D. Wash. June 3, 2022) (dismissing claim for abuse of process under Texas law in family separation case). Plaintiffs allege in conclusory fashion that the government acted to cause them trauma, induce them to abandon their asylum claims, and deter future migrants from coming to the United States. Cplt. ¶ 117. Even if credited, these allegations suggest only that the Government had ulterior motives for using legal process, not that the Government used the process for a purpose other than the one for which it was intended. That cannot sustain an abuse of process claim, under Texas law.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant its motion to transfer this action to the Western District of Texas or, in the alternative, dismiss the Complaint in its entirety, and for such other relief as the Court deems proper.

Dated:   July 13, 2023
          Brooklyn, New York

BREON PEACE
United States Attorney
Eastern District of New York
*Counsel for Defendant United States*
271-A Cadman Plaza East
Brooklyn, New York 11201

By:   */s/ Kimberly A. Francis*
       Kimberly A. Francis
       Melanie Speight
       (718) 254-6147
       (718) 254-7509
       kimberly.francis@usdoj.gov
       melanie.speight@usdoj.gov